UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PAMELA S. MILLS ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 2:05-0045 |
| ) | Judge Nixon / Brown |
| JO ANNE B. BARNHART, Commissioner ) | |
| Of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 11) and Defendant's Response (Doc. No. 16). Magistrate Judge Brown has issued a Report and Recommendation ("Report") (Doc. No 17), to which Plaintiff has filed objections (Doc. No. 18). Upon review of the Magistrate Judge's Report and for the reasons stated below, the Court ADOPTS the Magistrate Judge's Report in its entirety and DENIES Plaintiff's Motion for Judgment on the Administrative Record.

I. BACKGROUND

A. Procedural Background

Pamela Mills ("Mills" or "Plaintiff") filed applications for disability insurance benefits on June 24, 1991 and July 10, 1991. Based on these applications the Social Security Administration found that she had been disabled since October 1, 1990. Her case was reviewed again on July 17, 1997 and her benefits were continued based on a primary diagnosis of "disorders of back (discogenic and degenerative)." On November 2, 2000, her case was reviewed again and the Commissioner determined that her period of disability would terminate on January 1, 2001.

When her request for reconsideration was denied, Mills timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on May 23, 2002, at which time Plaintiff was represented by counsel. Plaintiff, her husband, and a vocational expert all provided testimony. On February 26, 2003, the ALJ issued a decision finding that Mills was not disabled within the meaning of the Social Security Act ("Act"). On April 6, 2005, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ decision, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 4).

Plaintiff filed this action to obtain judicial review of the Commissioner's final decision. (Doc. No. 1). The Court has jurisdiction under 42 U.S.C. § 405(g). The Court referred this matter to the Magistrate Judge. On May 30, 2006, the Magistrate Judge recommended that the Plaintiff's motion be denied. (Doc. No.17). Plaintiff asserts two objections to the Magistrate Judge's findings. (Doc. No. 18). Specifically, Plaintiff asserts that the ALJ erred in rejecting the opinion of treating physician Dr. Douglas Smith ("Dr. Smith"). In addition, Plaintiff alleges that the ALJ erred in finding that Plaintiff had improved to the point that she would be able to work, and that Plaintiff could perform a significant number of jobs. (Id.)

### B. Factual Background

Mills is a 53-year old woman with an eighth grade education. (Tr. 354). Prior to becoming disabled, Mills worked as a sewing machine operator, a job classified by the vocational expert as light and semi-skilled. She was deemed disabled in 1993 when a preceding ALJ found that pain in her cervical area, right arm, lower back, as well as mild depression, kept her from engaging in any sustained gainful activity. (Tr. 39). In reaching this decision, the ALJ took note of an MRI of Plaintiff's spine, which showed a tiny bulging disc, as well as a positive

Rheumatoid Arthritis test. This evidence lent credence to Plaintiff's claims of pain. (Tr. 38).

In 1997, Plaintiff underwent a consultative examination by Dr. Marty Gagliardi to determine whether disability benefits should be continued. (Tr. 140). Dr. Gagliardi's examination revealed "multiple trigger point areas of soreness" on Plaintiff's upper back, as well as "pain along the iliolumbar ligament and SI joints." (Id.) Dr. Gagliardi also noted, however, that Plaintiff could walk without the use of a cane or any other related device and that Plaintiff could be "[at a] job that allows her to sit five hours per day." (Tr. 141). Nevertheless, Plaintiff's disability payments were continued after the Agency judged in a Continuing Disability Review on July 17, 1997 that Plaintiff was still unable to engage in sustained gainful employment. (Tr. 18).

In late 2000, however, the Agency questioned Plaintiff's disability status in the next Continuing Disability Review. (Tr. 153-54). While the Agency acknowledged that the Plaintiff suffered from "severe pain," the Agency also noted that "evidence also showed that [the Plaintiff could] stand, move about and use [her] arms, hands and legs in a satisfactory manner." (Tr. 154). Plaintiff appealed this decision before a Disability Hearing Officer, who affirmed the original cessation of benefits on May 15, 2001. (Tr. 190). Plaintiff finally appealed this decision to the ALJ, who heard the appeal on May 23, 2002, and affirmed the cessation of benefits on February 26, 2003. (Tr. 18, 24).

During the hearing before the ALJ, it became apparent that evidence existed to support both parties' contentions. Plaintiff pointed to the restrictive assessment of Dr. Smith, who opined in November of 2000 that Plaintiff was afflicted by severe pain and was limited in her ability to perform many tasks. (Tr. 258-59). Specifically, Dr. Smith concluded that Plaintiff could sit for a total of four hours per day and that she was also restricted in her ability to

negotiate heights, tolerate humidity or vibrations. (Tr. 259). Dr. Smith also cited fibromyalgia, depression, hypothyroidism, pancreatitis, and neuralgia as sources for the Plaintiff's physical infirmities. (Tr. 260).

Plaintiff supported these findings by testifying before the ALJ that it was an ordeal to pick up items such as cartons of milk, and that she was unable to take certain pain relievers to alleviate the situation because of their side effects. Further, Mills testified that she could only drive herself approximately 20 miles and that she suffered great discomfort in performing tasks in the maintenance of her home, such as cooking and cleaning. (Tr. 365-67). Plaintiff's husband substantiated these statements and even stated her condition had worsened over the years. (Tr. 377).

In contrast to the Plaintiff's evidence, the ALJ was also presented with the opinion of Dr. Donita Keown ("Dr. Keown"). Dr. Keown performed a consultative examination of Plaintiff on September 20, 2006 and concluded that the Plaintiff was able to routinely lift 15 to 20 pounds, episodically lift 30 pounds, and to sit at least six hours in a workday. (Tr. 256). While she did not discount Plaintiff's complaints of pain, Dr. Keown observed that Plaintiff had "full range of motion at the shoulders, elbows, wrists and hands" and had no joint swelling, redness or warmth in her knees. (Id.) Dr. Keown also noted that she observed the Plaintiff walk easily through her office and get on and off of the examination table without difficulty. (Tr. 255).

In reaching his decision, the ALJ relied heavily on Dr. Keown's opinion. Explaining this reliance, the ALJ pointed out a deficiency in Dr. Smith's restrictive report. The ALJ noted that there was no evidence that Dr. Smith had ever examined the Plaintiff, as Dr. Smith's signature never appeared on any of the treatment notes recorded by the therapist working in his office. (Tr. 21). Assuming that Dr. Smith's report must have been based on these notes, the ALJ was

unimpressed by the minimal level of musculoskeletal findings that they contained, including the lack of measurements of range of motion, muscle strength, and sensory or reflex deficits. Instead the ALJ relied on Dr. Keown's conclusions, which were based on musculoskeletal findings, and the vocational expert's opinion that the Plaintiff could find work suited to her limitations, and concluded that the Plaintiff was no longer disabled as defined by the Social Security Act.

## II. STANDARD OF REVIEW

The Court's review of the portions of the Report to which Plaintiff objects is de novo. 28 U.S.C. § 636(b). The Court's review is limited, however, to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence shall be conclusive." 42 U.S.C. § 405(g). Accordingly, an ALJ's decision, if adopted by the Commissioner, will be upheld if it is supported by substantial evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence, as a term of art, is defined as "such evidence as a reasonable mind would accept as adequate to support the conclusion." Richardson v. Pereles, 402 U.S. 389, 401 (1979). It is "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

A finding of substantial evidence is of significance in an appeal of the Secretary's decision, as "[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." Her v. Comm'r,

203 F.3d 388, 389 (6th Cir. 1999); Crum v. Sullivan, 921 F.2d 642, 644 (1990) (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). Such a standard of review is consistent with the well-settled rule that the reviewing court in a Disability Hearing appeal is not to weigh the evidence or make credibility determinations, as such factual determinations are to be left to the ALJ and the Commissioner. Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993); Besaw v. Sec'y of Health and Human Servs., 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court, left to its own judgment, would have come to a different factual conclusion as to the Plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. Hogg, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

**1. Plaintiff objects to the Magistrate's conclusion that the ALJ did not err in rejecting the opinion of treating physician Dr. Smith.**

Plaintiff asserts that the ALJ erred in rejecting the medical opinion of Dr. Smith. Instead, the ALJ relied primarily on the findings of Dr. Keown, who performed a consultative examination of Plaintiff on September 20, 2006 and noted that Plaintiff:

> [h]as intact range of motion at the cervical, thoracic and lumbar spine; intact motor strength in both lower extremities . . . there is no evidence of diminished motor strength in the hands or arms. There is no evidence of joint swelling, redness or warmth on visual inspection of the joints of the upper and lower limbs. The claimant could be expected to sit at least 6 hours in an 8-hour day. She could routinely lift 15-20 pounds; episodically lift 30 pounds.

(Tr. 256). Dr. Keown further observed Plaintiff during her transit to the examination room and recorded that Plaintiff did not seem to be troubled by the walk to the room or by getting on or off the examination table. (Tr. 255). While Dr. Keown recorded the Plaintiff's expression of

discomfort in her joints, Dr. Keown observed that the Plaintiff had full range of motion in her neck, shoulders, elbows, wrists, hands, knees and ankles. (Tr. 255-56). Based upon these observations, Dr. Keown deduced that Plaintiff was capable of sitting six hours during an eight hour day. (Tr. 256).

While Plaintiff seeks to rely on the restrictive assessment of Dr. Smith, it is not clear that Dr. Smith ever personally observed Plaintiff himself, as his signature does not appear on any of the notes. Rather, the notes were taken by a staff person, Tracye Robertson ("Robertson"), who neglected to make any "mention of range of motion, muscle strength or weakness, sensory or reflex deficits, or muscle spasm" in her reports. (Id.) As a result, the ALJ did not take Dr. Smith's report as authoritative because the report was likely based on Robertson's notes, which were marked by a minimal level of musculoskeletal findings. (Id.) As such, the Court finds that the ALJ did not err in the decision to rely more heavily on Dr. Keown's medical opinion.

2. **Plaintiff objects to the Magistrate's conclusion that the ALJ did not err in finding medical improvement related to the ability to work and the existence of a significant number of jobs that Plaintiff could perform.**

Plaintiff further asserts that the ALJ erred in finding that there is substantial evidence to support the finding that there are a significant number of jobs that Plaintiff could perform. Plaintiff argues that even with her limited medical improvement, she still could not work. However, upon review of the record, the Court finds that the ALJ did not err in his assessment of Plaintiff's ability to work based on her medical improvement.

Dr. Keown found that Mills did not have diminished motor strength in her hands or arms, and was capable of sitting at least 6 hours in an 8-hour day. He also found that she could routinely lift 15-20 pounds, and episodically lift 30 pounds. While these limitations would not

7

allow Plaintiff to return to her past vocation as a sewing machine operator, the vocational expert testified that the Plaintiff would be able to perform a number of light jobs commensurate with the Plaintiff's age, education, experience and limitations. (Tr. 23).

The ALJ therefore had evidence upon which to decide that the Plaintiff was able to perform at least some work. Dr. Keown's report, which was based on a variety of tests and observations, as well as the vocational expert's opinion that jobs existed that the Plaintiff could accomplish, easily constitutes substantial evidence for the ALJ and the Commissioner for which to base their decision on. This sum of evidence is certainly "more than a mere scintilla of evidence...." Bell, 105 F.3d at 245 and therefore reached the substantial evidence standard. Thus, Dr. Keown's report and the vocational expert's testimony, as substantial evidence, demonstrate to this Court that the ALJ did not err in determining that the Plaintiff could perform a number of jobs.

## IV. CONCLUSION

For these reasons, this Court finds that Magistrate Judge Brown's Report is well-founded and supported by the record, and therefore ADOPTS it in its entirety. Accordingly, Plaintiff's Motion is DENIED.

It is so ORDERED,
Entered this the 29 day of September, 2006

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT